**CASE BEING CONSIDERED FOR TREATMENT
PURSUANT TO RULE 34(j) OF THE COURT'S RULES.**

## No. 22-7103

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

PABLO ABREU,

Plaintiff-Appellant,

v.

HOWARD UNIVERSITY,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Columbia
(Case No.: 1:21-cv-00397-APM)

---

**BRIEF FOR APPELLANT**

---

Pablo Abreu
*Appellant Pro Se*
2081 Matthews Avenue, 2nd Floor
Bronx, New York 10462
(315) 264-4376
pabreujr@gmail.com

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
APR 17 2023
RECEIVED

## TABLE OF CONTENTS

*Item*                                                              *Page*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-vii

STATEMENT OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-14

    A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-8

    C.    The District Court Decision . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D.    The Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 8-13

    E.    The District Court Decision Regarding the
        Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-33

    POINT I: STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . 15-16

    POINT II: THE COURT SHOULD HAVE BORROWED THE
    PERSONAL INJURY THREE YEAR STATUTE OF LIMITATIONS
    OR THE FOUR-YEAR FEDERAL DEFAULT STATUTE OF
    LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-23

A.  Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16-17

B.  The Three-Year Statue Should Apply  . . . . . . . . . . . . . . .  17-19

C.  The Federal Default Four Year Statute Under 28
    U.S.C. § 1658 is Applicable . . . . . . . . . . . . . . . . . . . . . . . .  20-23

POINT III: EVEN APPLYING THE LOCAL ONE-YEAR
STATUTE OF LIMITATION IN THE DISTRICT OF COLUMBIA,
THE CASE WAS TIMELY BROUGHT DUE TO THE COVID
PANDEMIC TOLLING THE STATUTE OF LIMITATIONS.  . . . . .  23-26

POINT IV: APPELLANT STATED A CLAIM FOR BREACH
OF CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26-33

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

CERTIFICATION PURSUANT TO Fed. R. App. P. 32(a)(7)(B) and (c)
and Rule 32 (g) (1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

## **<u>TABLE OF AUTHORITIES</u>**

*Item*                                                                                               *Page*

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 1658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 20

29 U.S.C. § 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 U.S.C. § 794 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. § 12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

42 U.S.C. § 12102(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. § 12181 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Rules**

Americans with Disabilities Act . . . . . . . . . . . . . . . . . . . . . . . . . . .  sic passim

Americans with Disabilities Act Amendments Act of 2008 . . . . . . . . . . . 20, 22, 23

District of Columbia Human Rights Act . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Federal Rule of Civil Procedure 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Rehabilitation Act of 1973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  sic passim

Title II of the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Title VI of the Civil Rights Act of 1964 . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Cases**

*Adams v. District of Columbia,*
740 F. Supp. 2d 173, 184 (D.D.C.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Anderson v. Liberty Lobby, Inc.,*
477 US 242, 255 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 1949 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 32

*Banks v. Chesapeake and Potomac Telephone Co.,*
802 F.2d 1416, 1420 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bell Atl Corp. v. Twombly,*
550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chenari v. George Washington Univ.,*
172 F. Supp. 3d 38, 47 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Deutsche Bank Nat'l Trust Co. v. Kernacs,*
2021 D.C. Super. LEXIS 117 (DC Superior Ct 2021) . . . . . . . . . . . . . . . . . . . . 26

*Doe v. Southeastern Univ.,*
732 F. Supp. 7, 8-9 (D.D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Duvall v. County of Kitsap,*
260 F.3d 1124, 1135 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC,*
753 F.3d 862, 869 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Everett v. Cobb County Sch. Dist.,*
138 F.3d 1407, 1409 (11th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Featherstone v. District of Columbia,*
908 F. Supp. 2d 153, 154 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gaona v. Town & Country Credit,*
324 F.3d 1050, 1054-55 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Goodman v. Lukens Steel Co.,*
482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) . . . . . . . . . . . . . . . . . . . . . 17

*Gordon v. District of Columbia,*
605 F. Supp. 2d 239, 244--45 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jaiyeola v. District of Columbia,*
40 A.3d 356, 368 (D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

*Jones v. R.R. Donnelley & Sons Co.,*
541 U.S. 369, 377-78, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004) . . . . . . . . . . . 20

*Kassner v. 2nd Ave. Delicatessen Inc.,*
496 F.3d 229, 237 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kowal v. MCI Communications Corp.,*
16 F.3d 1271, 1276 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*McGary v. City of Portland,*
386 F.3d 1259, 1265 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Montesano v. Catholic Univ. of Am.,*
20-CV-1496 (DLF), 2021 WL 2894720, at *3 (D.D.C. July 9, 2021) . . . . . . . . . 27

*O'Guinn v. Lovelock Corr. Ctr.,*
502 F.3d 1056, 1060 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Oluwashola Olaniyi Ajayi v. District of Columbia,*
2021 US Dist LEXIS 164611 [DDC Aug. 31, 2021,
Civil Action No. 20-1019 (TJK)]) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Proctor v. District of Columbia,*
74 F Supp 3d 436 (DDC 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Purcell v. N.Y. Inst. of Tech. Coll. of Osteopathic Med.,*
931 F.3d 59 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sharkey v. O'Neal,*
778 F.3d 767, 770 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Soignier v. American Bd. of Plastic Surgery,*
92 F.3d 547, 550-51 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stafford v. George Washington Univ.,*
56 F.4th 50 (DC Cir 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stewart v. District of Columbia,*
No. 04-1444, 2006 WL 626921, at *11 (D.D.C. Mar. 12, 2006) . . . . . . . . . . . . 18

*Sutton v. United Air Lines, Inc.,*
527 U.S. 471, 483, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) . . . . . . . . . . . . . 21

*Tenenbaum v. Williams,*
193 F.3d 581, 593 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Toma v. Univ. of Hawaii,*
304 F Supp 3d 956, 960-961 [D Haw 2018]) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,
534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) . . . . . . . . . . . . . . 22

*Tsintolas Realty Co. v. Mendez*,
984 A.2d 181, 187 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Tyler v. Washington Metropolitan Area Transit Authority*,
Civ. Act. No. 1:14-cv-00601 (ESH), 2014 WL 2979031,
*1 (D.D.C. July 3, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wilson v. Garcia*,
471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) . . . . . . . . . . . . . . . . . . 17

## STATEMENT OF SUBJECT MATTER JURISDICTION

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1331. Plaintiff-Appellant Pablo Abreu (hereinafter "Appellant or Mr. Abreu") seeks review of the Final Opinion, and Order dated June 17, 2022 granting Defendant/Appellee Howard University's (Appellee) Motion to Dismiss. (R5-R13). Appellant is also seeking review of the Memorandum Opinion and Order dated November 2, 2021. (R25-R35) On July 18, 2022, Appellant timely filed a Notice of Appeal conferring jurisdiction on this Court pursuant to 28 USC § 1291. (July 17, 2022 was a Sunday) (R56-R57).

## ISSUE PRESENTED FOR REVIEW

1.  Did the District Court err in holding that the one-year statute of limitation was applicable instead of the three-year personal injury statute of limitation?

    - The answer should be in the affirmative.

2.  Since the Rehabilitation Act and ADA do not contain a statute of limitations, does the federal default four-year statute under 28 U.S.C. § 1658 apply?

    - The answer should be in the affirmative.

1

3.    Did the District Court err in holding that Appellant did not plead a plausible cause of action for breach of contract?

- The answer should be in the affirmative.

4.    Even applying the local one-year statute of limitation in the District of Columbia, was the case timely brought due to the Covid pandemic tolling the statute of limitations?

- The answer should be in the affirmative.

## STATEMENT OF FACTS

### A. Procedural History

Appellant commenced this action on February 2, 2021.[1] Thereafter, on April 27, 2021 a motion to dismiss was made by Appellee.  The motion to dismiss was granted on November 2, 2021 with leave to file an amended complaint. On November 16, 2021, Appellant filed an amended complaint. Thereafter on November 30, 2021, Appellees moved to dismiss or in the alternative for summary judgment.  The Lower Court granted Appellee's Motion to Dismiss and dismissed Appellant's amended complaint on June 17, 2022. A Notice of Appeal was filed on July 18, 2022 pursuant to 28 USC § 1291. (July 17, 2022 was a Sunday) (R56-R57).

---

[1] Although I am pro se, I will be referring to myself in the third-person in this brief. In addition, I wish to advise the Court that although the final work product is mine, I did have some legal assistance in helping me draft this brief.

## B. The Complaint

This matter arises from Appellant's unlawful and unjust dismissal from Defendant Howard University's College of Medicine in August of 2019. Appellant brings this action against the University alleging discrimination on the basis of disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and breach of contract under District of Columbia law. (ECF No. 1). In particular, Appellant avers that, as a medical student, he contracted with the University to pursue his studies in good faith in exchange for a degree, but Defendant violated this implied contract, as set forth with specificity in the College of Medicine's Policies and Procedures manual (the "Policies"). The policies that led to Appellant's dismissal were (1) the University requirement that students successfully pass the United States Medical Licensing Examination ("UMSLE") Step 1 in their first three attempts, and (2) the University requirement that a student receive a passing score on the USMLE before the second Wednesday in July of the year the student completed their second year. Despite repeated requests for a reasonable accommodation concerning these policies, the University provided inadequate accommodation resulting in Appellant failing the exam three times.

More specifically, Appellant, Pablo Abreu, was a student at the Howard University College of Medicine. He enrolled as a student at the College of

Medicine in 2015. Mr. Abreu was dismissed from the College of Medicine on August 27, 2019. In a letter dated, August 27, 2019, the College of Medicine's Committee on Student Promotions and Graduation informed Mr. Abreu that he would be dismissed from the college because he made three unsuccessful attempts to pass the United States Medical Licensing Examination (UMSLE) Step 1.

The letter referenced previous communications, where Mr. Abreu was allegedly advised of deadlines to prevent dismissal, including passing the UMSLE Step 1 by June 1, 2019, which Mr. Abreu never received. Mr. Abreu first attempted the USMLE Step 1 after completion of his Spring 2017 studies. Prior to the exam, which took place in June, Mr. Abreu used a 6-week window between the end of his classes and the exam to prepare. He contacted the College of Medicine's Dean of Academic Affairs to inform her that he had been struggling to pass practice exams, get advice about how best to prepare for the exam, and to receive additional time to prepare.

Mr. Abreu was allowed to take the exam in September. However, he was informed that the College of Medicine only provides assistance with exam preparation after he has already failed an attempt. Mr. Abreu took the exam on September 20, 2017, and failed. After failing the exam, he was given the option to take a leave of absence from the College of Medicine and attend an 8-week intensive preparatory program approved by the College of Medicine in Champaign

4

Illinois, the Pass Program.

Mr. Abreu remained at the program from January 29, 2018, to August 24, 2018. He covered the costs of his stay at the Pass Program including rent, food, practice exams, and USMLE fees. While attending the Pass Program, Mr. Abreu was advised to seek help from a medical professional. In May 2018, Mr. Abreu sought treatment from a psychologist at the University of Illinois, recommended to him by the Pass Program. After a few sessions, the psychologist gave Mr. Abreu a diagnosis of "Specific Phobia: Situational Type," ranking his severe testing anxiety to be in the 98th percentile and concluded that he also screened positively for Attention Deficit Hyperactivity Disorder (ADHD).

With knowledge of his diagnosis, that same month, Mr. Abreu attempted to obtain an extension for his exam and sough an emergency loan to cover practice exams and living expenses as he prepared for the exam. The College of Medicine denied both requests.

On June 11, 2018, the school was notified by letter about Mr. Abreu's medical conditions, which was registered under the American with Disabilities Act. The clinical psychologist provided a letter noting that Mr. Abreu suffered from severe test anxiety. It noted Mr. Abreu's diagnosis of "Specific Phobia: Situational Type," and concluded that he also screened positively for ADHD. The psychologist's letter also stated that despite consistent efforts to challenge his

anxiety, the difficulties he faced with test-taking anxiety could significantly impede Mr. Abreu's ability to make progress toward the licensure.

Mr. Abreu asked for the College of Medicine to set aside its policy of limiting to USMLE Step 1 attempts to 3. He was allowed to take the exam at a later date but failed. After his second unsuccessful attempt at the exam, he was presented for dismissal, but he appealed by letter on September 19, 2018. The College of Medicine later granted a medical leave of absence, with no written expression of terms or expectations being delivered to Mr. Abreu of how he should proceed during the leave. The school offered no other accommodation.

Mr. Abreu received no letter from the College of Medicine regarding the conditions of his leave of absence. During his leave he continued with self-directed study. His participation in the Pass Program and therapy were interrupted due to a car accident in December 2018, which prevented him from working, and lack of health insurance. He resumed therapy with a psychologist from the Westchester Medical Center, who wrote the school suggesting they set aside their policy on the number of attempts for the USMLE Step 1.

On June 10, 2018, the College of Medicine's dean contacted Mr. Abreu to alert him that he was in danger of dismissal for being out of compliance with a June 1, 2018, deadline for submitting a successful third USMLE Step 1, according to a leave of absence letter Mr. Abreu never received. Left with no

accommodations from the College of Medicine, Mr. Abreu attempted the exam for a third time on June 22, 2019 and failed. Despite Mr. Abreu's efforts to comply with the proper procedure to be successful on the exam, he was dismissed. He completed the PASS program without financial aid, and he maintained contact with the College. However, the College of Medicine's failure to send him notice resulted in him being unprepared for his final attempt at the USMLE Step 1.

Appellant alleged breach of contract because the student handbook, stated that the second Wednesday in July of the year the student completed their second year was the cutoff to pass the UMSLE Step 1. In a letter dated August 27, 2019, Mr. Abreu was dismissed from the College of Medicine for not completing the exam by June 1, 2019. The College of Medicine breached its contractual obligation when it dismissed Appellant before the manual's stated cutoff date for completion of the UMSLE Step 1.

In addition, the Appellant alleged a failure to accommodate under Title III of the Americans with Disability Act 42, U.S.C. § 12181 and Section 540 of the Rehabilitation Act Of 1973, 29 U.S.C. § 794. Appellant notified the College of Medicine of his diagnosis of "Specific Phobia: Situational Type" and ADHD on June 11, 2018. 33. The diagnosing psychologist noted that despite consistent efforts to challenge his anxiety, the difficulties he faced with test-taking anxiety could significantly impede Appellant's ability to make progress toward the

licensure. The College of Medicine made no individualized assessment into Appellant's impairment and made no accommodations based on the diagnosing psychologist's letter.

## C. The District Court Decision

The Appellee moved to dismiss the complaint based on the statute of limitation and for failure to state claim for relief. The Court held that the DCHRA's one-year period applies and therefore Abreu's federal claims were conclusively time-barred citing *Jaiyeola v. District of Columbia*, 40 A.3d 356, 368 (D.C. 2012). There, the court held that the DCHRA was the most analogous District of Columbia law to the Rehabilitation Act and therefore applied the DCHRA's one-year limitations period, instead of the three-year statute of limitation for personal injury claims. Since the College dismissed Mr. Abreu on August 27, 2019, but did not file suit until more than a year later on February 12, 2021, the Court dismissed Appellant's ADA and Rehabilitation Act claims as time barred. The Court dismissed the breach of contract claim finding that the College did not prematurely dismiss Mr. Abreu. However, the Appellant was provided an opportunity to amend his complaint.

## D. The Amended Complaint

The amended complaint alleges the following: Mr. Abreu was dismissed from the College of Medicine on August 27, 2019. In a letter dated, August 27,

8

2019, the College of Medicine's Committee on Student Promotions and Graduation informed Mr. Abreu that he would be dismissed from the college because he made three unsuccessful attempts to pass the United States Medical Licensing Examination (UMSLE) Step 1. The letter referenced previous communications, where Mr. Abreu was allegedly advised by Dean Ford of deadlines to prevent dismissal, including passing the UMSLE Step 1 by June 1, 2019, which Mr. Abreu never received by standard U.S. Mail, email or any other means. Mr. Abreu replied to Dean Ford that he never received such notice, but his concerns about proper notice were not addressed by Dean Ford. Furthermore, the requirement that Mr. Abreu achieve a passing score on the June 1 exam was arbitrary. There is no section within the University's policies and procedures which mandates that a specific exam be passed or else risk dismissal from the program.

Specifically, the University violated its own policies in dismissing Mr. Abreu in August of 2019 for not timely passing the USMLE Step 1 exam, as the University's manual stated that the second Wednesday in July of the year the student completed their second year was the cutoff to pass the UMSLE Step 1. Mr. Abreu first attempted the USMLE Step 1 after completion of his Spring 2017 studies. Prior to the exam, which took place in June, Mr. Abreu used a 6-week window between the end of his classes and the exam to prepare. He contacted the College of Medicine's Dean of Academic Affairs to inform her that he had been

struggling to pass practice exams, and to get advice about how best to prepare for the exam, and to receive additional time to prepare. Mr. Abreu was allowed to attempt the exam in September. However, Mr. Abreu was informed that the College of Medicine only provides assistance with exam preparation after he has already failed an attempt.

Mr. Abreu took the exam on September 20, 2017, and failed. After failing the exam, he was given the option to take a leave of absence from the College of Medicine and attend an 8-week intensive preparatory program approved by the College of Medicine in Champaign Illinois, the Pass Program. Mr. Abreu took a leave of absence from the program and attended a test preparatory program in order to comply with the University requirements regarding passing exam scores. Mr. Abreu remained at the program from January 29, 2018, to August 24, 2018. He covered the costs of his stay at the Pass Program including rent, food, practice exams, and USMLE fees.

While attending the Pass Program, Mr. Abreu was advised to seek help from a medical professional. In May 2018, Mr. Abreu sought treatment from a psychologist at the University of Illinois, recommended to him by the Pass Program. After a few sessions, the psychologist gave Mr. Abreu a diagnosis of "Specific Phobia: Situational Type," ranking his severe testing anxiety to be in the 98th percentile and concluded that he also screened positively for Attention Deficit

Hyperactivity Disorder (ADHD). Mr. Abreu attempted to obtain an extension for his exam and sought an emergency loan to cover practice exams and living expenses as he prepared for the exam. The College of Medicine denied both requests.

On June 11, 2018, the school was notified by letter about Mr. Abreu's medical conditions, which were registered under the American with Disabilities Act. The clinical psychologist provided a letter noting that Mr. Abreu suffered from severe test anxiety. It noted Mr. Abreu's diagnosis of "Specific Phobia: Situational Type," and concluded that he also screened positively for ADHD. The psychologist's letter also stated that despite consistent efforts to challenge his anxiety, the difficulties he faced with test-taking anxiety could significantly impede Mr. Abreu's ability to make progress toward the licensure.    Mr. Abreu asked for the College of Medicine to set aside its policy of limiting USMLE Step 1 attempts to 3. He was allowed to take the exam at a later date but failed. After his second unsuccessful attempt at the exam, he was presented for dismissal, but he appealed by letter on September 19, 2018. The College of Medicine later granted a medical leave of absence, with no written expression of terms or expectations being delivered to Mr. Abreu of how he should proceed during the leave. The school offered no other accommodation. Further, Dean Ford's June 10th letter to Mr. Abreu regarding his potential dismissal had a significant impact on Mr.

11

Abreu's mental health.  Notably, this arbitrary letter and failure to follow up on questions Mr. Abreu might have had, caused severe spikes to Mr. Abreu and affected his preparation for his third attempt at taking the taking the exam.

Specifically, university administration ignored recommendations from mental health professionals, Psychologists Dr. Angelo Cedeno, Dr. Paul Joffe and Psychiatrists Dr. Mohsen Jalai-Roudsari and Dr. Sina Nikayin regarding Mr. Abreu's condition and the recommendation for HUCM to default to the National Board of Medical Examination limit of 6 attempts at taking the exam. At a very minimum the school should have provided reasonable accommodations to Mr. Abreu in order for him to adequately prepare for his examination. Instead, the school did not provide any reasonable accommodation, despite being put on notice of his condition and a need to have accommodations with regard to the exam schedule and/or number of times to complete the exam.

These actions by the University were not done in good faith and were done in breach of the implied contract with Mr. Abreu to act in good faith when determining whether reasonable accommodations were appropriate. On June 10, 2018, the College of Medicine's dean contacted Mr. Abreu to alert him that he was in danger of dismissal for being out of compliance with a June 1, 2018, deadline for submitting a successful third USMLE Step 1, according to a leave of absence letter Mr. Abreu never received. As he was left with no accommodations from the

12

College of Medicine, Mr. Abreu attempted the exam for a third time on June 22, 2019, and failed.

Despite Mr. Abreu's efforts to comply with the proper procedure to be successful on the exam, he was dismissed. He completed the PASS program without financial aid, and he maintained contact with the college. However, the College of Medicine's failure to send him notice resulted in him being unprepared for his final attempt at the USMLE Step 1.

The Appellee renewed its motion to dismiss and alternatively moved for summary judgment.

### E. The District Court Decision Regarding the Amended Complaint

The court dismissed the ADA and Rehabilitation Act claims as time-barred. The pleading included additional factual allegations and a new theory that the University duty of good faith and fair dealing by failing to grant his accommodation requests. The Court held that the amendments to Abreu's original complaint largely reemphasize facts previously alleged and do not substantively address the primary deficiency of his claim: that he was dismissed pursuant to the explicit provisions of the Policies and Procedures Manual ("Policy Manual"), that constituted the terms of his alleged implied contract with the University. Abreu's new allegations include that he initially reached out to the Dean of Academic Affairs for assistance prior to his first attempt at the United States Medical

13

Licensing Examination ("USMLE") Step 1; that the Dean's June 10, 2018, letter regarding Abreu's potential dismissal significantly impacted his mental health; and that he attempted to communicate with the College after his dismissal prior to initiating this litigation. The Court held that none of these allegations impact whether Mr. Abreu's dismissal violated the University's contractual obligations. The Court below held that after Abreu's failure to pass USMLE Step 1 three times, the terms of the parties' agreement permitted the University to dismiss Abreu pursuant to its policy. The court treated this claim as a contract claim under the common law that was already rejected as contrary to both the alleged facts and the language of the Policy Manual. The Court further stated that Abreu tried to recast his ADA and Rehabilitation Act claims as contract claims by arguing that the University's failure to provide "reasonable" accommodations violated its contractual duty to act in good faith. The Court held that in the absence of explicit contractual language, there is no independent obligation on the part of the University to comply with anti-discrimination law and thus dismissed the complaint.

## SUMMARY OF ARGUMENT

The Lower Court erred in dismissing Appellant's case. Put simply, had the Lower Court examined all the facts in the light most favorable to the Appellant, it would have concluded that Appellant pleaded enough facts to demonstrate he had a

plausible claim for breach of contract. The Amended Complaint pleaded enough facts that, taken in the aggregate, demonstrated that the Appellee breached the implied contract by not reasonably accommodating him. The District Court erred in holding that the one-year statute of limitation was applicable instead of the three-year personal injury statute of limitation. Also, since the Rehabilitation Act and ADA do not contain a statute of limitations, the federal default four-year statute under 28 U.S.C. § 1658 should have applied. Further even applying the local one-year statute of limitation in the District of Columbia, the case was timely brought due to the Covid pandemic tolling the statute of limitations.

Given that all pleaded acts had to be taken as true for the purposes of the motion to dismiss, the Appellee's Motion to Dismiss should have been denied.

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

This Court reviews a District Court's grant of Motion to Dismiss *de novo*. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir. 1999). The evidence is construed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 US 242, 255 (1986).

When deciding a motion to dismiss for failure to state a claim under Federal Rule 12 (b)(6), the court must accept as true all well-pleaded facts alleged in the

complaint and draw all reasonable inferences in Appellant's favor. See, *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), an Appellant must plead enough facts to state a claim to relief that is plausible on its face. See, *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where the Appellant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S. Ct. at 1950.

Thus, the applicable standard of review is *de novo,* and the evidence should be construed in the light most favorable to the Appellant.

## <u>POINT II</u>

### THE COURT SHOULD HAVE BORROWED THE PERSONAL INJURY THREE YEAR STATUTE OF LIMITATIONS OR THE FOUR-YEAR FEDERAL DEFAULT STATUTE OF LIMITATIONS

**A. Introduction**

The Rehabilitation Act and ADA do not contain a statute of limitations, and thus either the federal default four-year statute under 28 U.S.C. § 1658 or the limitations period must be borrowed from the state cause of action most appropriate or most analogous to a plaintiff's claim. See, e.g., *Gaona v. Town &*

16

*Country Credit*, 324 F.3d 1050, 1054–55 (8th Cir. 2003) (discussing the framework for borrowing state statute of limitations to Rehabilitation Act and ADA claims under *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *Goodman v, Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998) (same); *Soignier v. American Bd. of Plastic Surgery*, 92 F.3d 547, 550–51 (7th Cir.1996) (same).

## B. The Three-Year Statue Should Apply

Where a plaintiff alleges a violation in a non-employment case, a state's personal injury statute of limitations has generally been applied. *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1055 (8th Cir. 2003) Since the Supreme Court's ruling in *Goodman*, most Courts of Appeals, with the exception of only one Circuit (the Fourth Circuit), have applied the state statute of limitations for personal injury actions to claims under the Rehabilitation Act and the ADA. (footnote and citations omitted); accord, *Purcell v. N.Y. Inst. of Tech. Coll. of Osteopathic Med.,* 931 F.3d 59 (2d Cir. 2019); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996); Everett *v. Cobb County School District*, 138 F.3d 1407 (1998).

In the District of Columbia, this limitations period is three years, and thus a three-year limitations period should be applied in Rehabilitation Act and ADA

cases. *Stewart*, 2006 WL 626921, at *8–9; *Doe v. Southeastern Univ.*, 732 F. Supp. 7, 8–9 (D.D.C. 1990).

The Court below relied on the decision in *Jaiyeola v. District of Columbia*, 40 A.3d 356 (D.C. 2012). In *Jaiyeola*, the DCCA applied the one-year statute of limitations of the District of Columbia Human Rights Act ("DCHRA") to a Rehabilitation Act claim rather than the District's three-year statute of limitation governing personal injury claims. However, "a particular state's characterization of a federal claim for purposes of determining which statute of limitations is applicable is not binding on a federal court." *Featherstone v. District of Columbia*, 908 F. Supp. 2d 153, 154 (D.D.C. 2012) (citing *Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416, 1420 (D.C. Cir. 1986)).

Moreover, for "Rehabilitation Act claims in this jurisdiction, federal courts have uniformly borrowed the District of Columbia's three-year statute of limitations for personal injury claims." *Tyler v. Washington Metropolitan Area Transit Authority*, Civ. Act. No. 1:14-cv-00601 (ESH), 2014 WL 2979031, *1 (D.D.C. July 3, 2014) (citing *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 184 (D.D.C.2010); *Gordon v. District of Columbia*, 605 F. Supp. 2d 239, 244--45 (D.D.C. 2009); *Stewart v. District of Columbia*, No. 04-1444, 2006 WL 626921, at *11 (D.D.C. Mar. 12, 2006)). Accordingly, this Court should apply a three-year

statute of limitations, which Plaintiff has clearly satisfied with the timely filing of the complaint herein.

It is also respectfully submitted that there should be one uniform statute of limitations that applies in a civil rights setting. For example, a district court erred in granting summary judgment to the university because the proper limitations period for Title VI of the Civil Rights Act of 1964 cases brought in the District of Columbia Circuit was the three-year not the one-year period contained in the District of Columbia Human Rights Act. *Stafford v George Washington Univ.*, 56 F.4th 50 (DC Cir 2022). The D.C. Circuit has made clear that the District's three-year residual statute of limitations applies to a § 1983 claim, as do its "tolling rules so long as [they] are not inconsistent with the policies underlying § 1983." *Oluwashola Olaniyi Ajayi v District of Columbia*, 2021 US Dist LEXIS 164611 [DDC Aug. 31, 2021, Civil Action No. 20-1019 (TJK)] See also, *Proctor v District of Columbia*, 74 F Supp 3d 436 (DDC 2014).

In this particular case, having the uniformity regarding the statute of limitation is important and compelling interest. It should not depend on whether the case is based on race under Title VI, or a claim brought under 1983 or on a disability under the ADA. A uniform statute of limitation should apply to all of these types of discrimination and civil rights claims.

19

## C. The Federal Default Four Year Statute Under 28 U.S.C. § 1658 is Applicable.

Neither the Rehabilitation Act nor the ADA contains an express statute of limitations. See *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 869 (9th Cir. 2014); Before 1990, federal courts generally borrowed the statute of limitations provided by the analogous state law. See *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). However, in 1990, Congress passed 28 U.S.C. § 1658, which provides a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. 28 U.S.C. § 1658. Although both the Rehabilitation Act and the ADA were enacted before this date, the Supreme Court has held that Section 1658's statute of limitations also applies to claims brought under amendments to existing statutes if "the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) The ADA and the Rehabilitation Act were amended by the ADA Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009. Accordingly, to determine the appropriate statute of limitations period, the Court must consider whether Plaintiff's claims were "made possible" by the ADAAA. See Jones, 541 U.S. at 382. *Toma v Univ. of Hawaii*, 304 F Supp 3d 956, 960-961 [D Haw 2018]).

In order to establish a violation of Title II of the ADA, a plaintiff must show that: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." *O'Guinn v. Lovelock Corr. Ctr.,* 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004)). To establish a claim under Section 504 of the Rehabilitation [**10] Act, a plaintiff must establish the same elements as above and must also show that "the program receives federal financial assistance." Id. (quoting *Duvall v. County of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001)).

The element at issue is whether Plaintiff qualifies as an individual with a disability. Under the ADA, a disability was defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." ADA § 3(2)(A). The ADA did not define "physical or mental impairment," "substantially limits," or "major life activities." In two key cases, the Supreme Court provided guidance regarding how to interpret these terms. In *Sutton v. United Air Lines, Inc.,* the Supreme Court held that "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but

21

if the impairment is corrected it does not 'substantially limit' a major life activity." 527 U.S. 471, 483, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* the Supreme Court held that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." [**11] 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002).

Congress expressly rejected these two cases in passing the ADAAA and revised the definition of "disability" for both the ADA and the Rehabilitation Act. See 42 U.S.C. § 12101(a)(4)-(7); 42 U.S.C. § 12102(4). Specifically, the ADAAA provides that "[a]n impairment that is episodic . . . is a disability if it would substantially limit a major life activity when active," and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(D), (E)(i)(I).

Here, accepting the allegations of the Amended Complaint as true, Plaintiff's claims were only made possible by the ADAAA. Specifically, Plaintiff alleges that a diagnosis of "Specific Phobia: Situational Type," ranking his severe testing anxiety to be in the 98th percentile. Thus, his anxiety was episodic in nature and, he took a leave and then returned. Thus, it can be inferred that he responded to

treatment. Based on these allegations, Plaintiff's claims were "made possible" by the ADAAA because he would not have been able to allege that he qualified as an individual with a disability under the pre-amendment ADA.

## POINT III

**EVEN APPLYING THE LOCAL ONE-YEAR STATUTE OF LIMITATION IN THE DISTRICT OF COLUMBIA, THE CASE WAS TIMELY BROUGHT DUE TO THE COVID PANDEMIC TOLLING THE STATUTE OF LIMITATIONS.**

The Lower Court held that the one-year statute of limitations was applicable and not the three-year personal injury statute of limitations. The Court below held that since Mr. Abreu was dismissed by the College on August 27, 2019 but did not file suit until more than a year later on February 12, 2021, the Court dismissed Appellant's ADA and Rehabilitation Act claims as time barred. Even assuming arguendo that the Court was correct in applying the one-year statute of limitation, the Lower Court erred in dismissing the matter as the statute of limitations was tolled due to the Covid pandemic.

On March 15, 2020, former Chief Judge Robert E. Morin issued an Order indicating that DC Superior Court will suspend a number of its usual activities for the next several weeks due to the ongoing health crisis. On March 19, 2020, former Chief Judge Morin issued another Order indicating that unless otherwise ordered by the court, all deadlines and time limits in statutes, court rules, and standing and other orders issued by the court that would otherwise expire before May 15, 2020

23

including statutes of limitations, are suspended, tolled, and extended during the period of the current emergency. Such deadlines and time limits may be further suspended, tolled, and extended as circumstances change. March 19, 2020, Order at 2. Therefore, all deadlines falling between March 18, 2020 and May 15, 2020 were suspended, tolled, and extended. On May 14, 2020, former Chief Judge Morin issued an Amended Order which lifted tolling deadlines for motions subject to Super. Ct. Civ. R. 12-I for parties represented by Counsel who had previously registered for E-filing with the Court before March 18, 2020, but extending tolling for unrepresented parties until the conclusion of the period of emergency, which was originally set for June 19, 2020. On June 19, 2020, former Chief Judge Morin issued an Amended Order, further extending the period of emergency until August 14, 2020.

On August 13, 2020, former Chief Judge Morin issued another Amended Order, further extending the period of emergency until November 9, 2020. Former Chief Judge Morin's tolling of all deadlines remains in place "with the following exceptions: (1) deadlines applicable to parties represented by counsel in pending cases, except deadlines for service of process; (2) discovery-related deadlines applicable to all parties, including parties not represented by counsel; and (3) deadlines in scheduling orders issued after March 18, 2020." August 13, 2020, Order at 3.

On November 5, 2020, Chief Judge Anita Josey-Herring issued another Amended Order, further extending the period of emergency until January 15, 2021. Former Chief Judge Morin's tolling of all deadline remains in place "with the following exceptions: (1) deadlines applicable to parties represented by counsel in pending cases, except deadlines for service of process; (2) discovery-related deadlines applicable to all parties, including parties not represented by counsel; (3) for motions filed on or after November 10, 2020, motions related deadlines applicable to all parties, including parties not represented by counsel; and (4) deadlines in scheduling orders issued after March 18, 2020." Nov. 5, 2020, Order at 3.

On January 13, 2021, Chief Judge Anita Josey-Herring issued an Amended Order, further extending the period of emergency until March 31, 2021. Former Chief Judge Morin's tolling of all deadline remains in place "with the following exceptions: (1) deadlines applicable to parties represented by counsel in pending cases; (2) discovery-related deadlines applicable to all parties, including parties not represented by counsel; (3) effective January 29, 2021, deadlines for service of process applicable to all parties, including parties not represented by counsel; (4) deadlines for responsive pleadings applicable to all parties, including parties not represented by counsel; (5) motions-related deadlines applicable to all parties, including parties not represented by counsel; and (6) deadlines in orders issued

after March 18, 2020." Jan. 15, 2021, Order at 3. See *Deutsche Bank Nat'l Trust Co. v. Kernacs,* 2021 D.C. Super. LEXIS 117 (DC Superior Ct 2021).

Mr. Abreu was dismissed by the College on August 27, 2019 but did not file suit until more than a year later on February 12, 2021, the Court dismissed Appellant's ADA and Rehabilitation Act claims as time barred. However, the statute of limitations was tolled between March 15, 2020 until February 12, 2021 due to the Covid pandemic. Accordingly, assuming the one-year statute of limitations is applicable then the limitation period did not expire on August 27, 2020, and did not expired on February 12, 2021, because the statute of limitations was tolled until March 2021.

## POINT IV

## APPELLANT STATED A CLAIM FOR BREACH OF CONTRACT

Courts in the District of Columbia 'recognize the general rule "that the relationship between a university and its students is contractual in nature. *Chenari v. George Washington Univ.*, 172 F. Supp. 3d 38, 47 (D.D.C. 2016). The keystone of an implied-in-fact contract is the parties' reasonable expectations at the time of contracting. District of Columbia law recognizes that all contracts contain an implied duty of good faith and fair dealing. *Chenari*, 172 F. Supp. 3d at 47 To show that a university breached the implied covenant of good faith and fair

dealing, a plaintiff must allege 'either bad faith or conduct that is arbitrary and capricious. *Chenari* at 745.

Further D.C. Courts have recognized that valid, implied contract exist between a university and its students due to the student conferring a benefit upon the university by paying tuition to the university and the university providing requisite educational material and services to the student. *Montesano v. Catholic Univ. of Am.*, 20-CV-1496 (DLF), 2021 WL 2894720, at *3 (D.D.C. July 9, 2021). D.C. Courts have also recognized that universities have an obligation of good faith and fair dealing with regard to these implied contracts. Id.

Appellant has adequately plead a contract relationship with Defendant and Defendant is in breach of that contract. In order to prevail on a breach of contract claim, 1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.D.C. 2009).

On a motion to dismiss, the amended complaint is viewed in a light most favorable to Appellant and he is granted the benefit of all inferences that can be derived from the facts alleged. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Appellant has adequately plead that there was a valid contract between himself and the College. Here, a contract between Appellant and the College was created through both the policy handbook which elaborates upon

27

the rights Plaintiff has before Defendant can dismiss him from any university program.

Additionally, Appellee breached its covenant of good faith and fair dealing by refusing to give reasonable accommodations to Plaintiff with regard to his medical conditions. The contract between Plaintiff and Defendant was premised on the implicit agreement that both Mr. Abreu and the College would act in good faith to fulfill their obligations under the contract. The amended complaint stated specifically that Defendant breached that duty of good faith and fair dealing by not granting Plaintiff reasonable accommodations for his medical issues, despite the recommendations from Plaintiff's highly qualified doctors.

For these reasons, Plaintiff fulfills his burden to plead a facially plausible complaint against Appellee. Specifically, these issues deal with Defendant's accommodations of Plaintiff's medical condition and the handling of their policies regarding UMSLE. These genuine issues are as follows:

> • The University violated its own policies in dismissing Abreu in August of 2019 for not timely passing the USMLE Step 1 exam, as the University's manual stated that the second Wednesday in July of the year the student completed their second year was the cutoff to pass the UMSLE Step 1. (See ECF No. 5-2 at 9 (wherein the

manual states: "Students will be considered as not making satisfactory academic progress (SAP) if the student is required to attend the Summer Directed Study Program (SDSP) or if a passing score for USMLE Step 1 is not received on or before the second Wednesday in July –even if the student is in the SDSP."")).

• The University was notified of Plaintiff's medical condition on June 11, 2018 Plaintiff's clinical psychologist's letter to the University explaining Plaintiff's diagnosis)) but failed to provide Abreu reasonable accommodation by rejecting his request for the university to waive the policy that a student who fails the USMLE three times must be dismissed.

• The University's granting of a medical leave of absence and allowing Plaintiff to focus exclusively on passage of the USMLE was insufficient accommodation for Plaintiff's medical condition by forcing him to return prematurely.

As one might expect, most (if not all) reputable Universities, have ADA policies that are clearly delineated in the handbook at Howard University. Howard University states:

> STUDENTS WITH DISABILITIES HOWARD UNIVERSITY
>
> A. Who is Eligible for Services? All students attending the Howard University with a documented disabilities are eligible and encouraged to register for services.
>
> Responsibilities of the Office of the Dean for Special Student Services 1. Determine eligibility 2. Identify appropriate accommodations (academic, auxiliary aids, etc.) 3. Develop accommodations plan and complete faculty notification forms with student 4. Work with faculty to ensure delivery of accommodations (arranging testing, use of auxiliary aids in classrooms, classroom modification, etc.) 5. Maintain detailed confidential records that document the plan for the provision of selected accommodations 6. Assist in course registration each semester 7. Assist students in development of self-advocacy
>
> In compliance with the law (Section 504, Rehabilitation Act and the American with Disabilities Act, "ADA"), Howard University is committed to providing its disabled students with reasonable accommodations. There are specific guidelines for the acquisition of accommodations and services under ADA. (From the First Year Handbook Pages 20-21 of the 2015-2016 Student Handbook-Policy and Procedure Handbook that was in effect when he enrolled in the Medical School.)

The ADA policies of Howard University continued throughout the duration

of Appellant's enrollment at Howard University. The 2019-2020 handbook clearly

delineated the students' ADA rights.

> A. Eligibility for Services
> All students attending Howard University with a documented disability are eligible and encouraged to register for service
>
> C. Determining Accommodations
> Accommodations are determined as a result of a comprehensive individualized assessment, including a review of medical reports, psychological reports, academic background and an interview with the student.
>
> D. Reasonable Accommodations or Lack Thereof
> OSS strives to provide reasonable accommodations and works to facilitate an agreeable working relationship between you and the University. If you feel that you are not being treated fairly because of your disability, you are encouraged to contact our office and make an appointment to discuss the issue(From the First Year Handbook Pages 17-18 of the 2019-2020 Student Handbook-Policy and Procedure Handbook that was in effect when he enrolled in the Medical School.)

Although the amended complaint does not set forth the specific language in

the handbook, it can be reasonably inferred from the Amended Complaint that

Appellant was alleging a violation of the aforementioned specific handbook

provisions when it alleged the following in his amended complaint:

31

27. At a very minimum the school should have provided reasonable accommodations to Mr. Abreu in order for him to adequately prepare for his examination.

28. Instead, the school did not provide any reasonable accommodation, despite being put on notice of his condition and a need to have accommodations with regard to the exam schedule and/or number of times to complete the exam.

29. These actions by the University were not done in good faith and were done in breach of the implied contract with Mr. Abreu to act in good faith when determining whether reasonable accommodations were appropriate.

30. In essence, the behavior of the University suggests that their implied contract with Mr. Abreu was not going to be followed and that the University would essentially take the money that Mr. Abreu paid it by dismissing him, without allowing him to achieve a degree, if Mr. Abreu attempted to invoke some of his contractual rights, i.e., the right to receive accommodations pursuant to state and federal law.

31. This constitutes bad faith on the part of the University and is in breach of the implied contract between the University and Mr. Abreu

Appellant has alleged a facially plausible claim given the factual context that allows the court to draw the reasonable inference that the Appellee is liable for the misconduct alleged because it alleged that it breaches the implied contract between the parties due to failing to reasonably accommodate Mr. Abreu. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). Thus, it can be reasonably inferred from the

Amended Complaint that Appellant was alleging a violation of the aforementioned specific handbook provisions concerning reasonable accommodations. Accordingly, Appellant has alleged a plausible claim for breach of contract.

## CONCLUSION

For all of the above-mentioned reasons, Appellant respectfully requests the order granting Appellees' motion to dismiss be reversed and the matter should be remanded back to the District Court for further consideration.

Dated: April 14, 2022

Respectfully submitted

**PABLO ABREU**
**Appellant Pro Se**
2081 Matthews Avenue, 2nd Floor
Bronx, New York 10462
315 264-4376
pabreujr@gmail.com

33

## CERTIFICATION PURSUANT TO
## Fed. R. App. P. 32(a)(7)(B) and (c) and Rule 32 (g) (1)

The undersigned hereby certifies that the foregoing brief complies with the type-volume of Fed. R. App. P. 32(a)(7)(B) and Rule 32 (g) (1) because the brief contains 7,322 words of text.

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14pt.

**PABLO ABREU**
**Appellant Pro Se**